(No. 36987.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SANTIAGO OSORIO GONZALES, Plaintiff in Error.

*Opinion filed May 29, 1968.—Rehearing denied Sept. 24, 1968.*

Ward, J., took no part.

Alan J. Scheffres, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

The defendant, Santiago Osorio Gonzales, was found guilty of murder and sentenced to 199 years imprisonment following a jury trial in the circuit court of Cook County. In this court the defendant contends that his constitutional right to counsel was impaired; that his motion to suppress

statements was erroneously denied; that a shotgun was improperly admitted into evidence; that the trial court erroneously refused to give the jury an instruction on manslaughter; and that the closing argument of the prosecutor contained inflammatory and prejudicial remarks.

On September 10, 1959, at approximately 10 P.M. Guido J. Garro was shot and killed while standing in front of a tavern. A witness testified that at the time of the shooting he observed an automobile pull up to the front of the tavern and a person rise from the rear seat with an object. A flash and noise followed and the witness then noticed Garro lying on the ground, mortally wounded from a shotgun blast. None of the persons at the scene of the shooting were able to identify the occupants of the automobile.

On October 28, 1959, a Chicago police officer, Howard Roos, carrying a warrant for the defendant's arrest, went to Kingston, New York, where he took custody of the defendant and returned him to Chicago that same afternoon. After having lunch with Roos and two other police officers, the defendant was taken to the North Avenue police station where he signed a statement admitting that he had fired a shotgun into the group of men standing in front of the tavern. Present at the taking of this statement were four police officers and a priest. A second statement, similar to the first, was signed by the defendant on the following day, October 29, 1959.

The defendant thereafter retained Manuel Segarra as counsel, and on February 29, 1960, both the defendant and his attorney appeared before Judge Harry G. Hershenson and presented a petition requesting the court to allow Segarra to withdraw as defendant's attorney, or in the alternative "to appoint a competent attorney to direct and assist him in representing the defendant." In support of this request the petition asserted, in substance, that Segarra had been practicing law for less than one year and that, in view of the severity of the crime with which the defendant was

charged, "the petitioner feels that unless he is assisted or directed by an experienced trial lawyer  *  *  *  the interest of the defendant will not be properly served." In response to this petition Judge Hershenson entered an order appointing the Public Defender of Cook County as additional counsel to assist Segarra in the trial of the case. At this point Mr. Oakey from the Public Defender's office appeared in court and was advised of the appointment. Segarra and Oakey thereafter entered into a conversation, the nature of which is not disclosed by the record, and afterwards Judge Hershenson noted that Segarra would proceed alone on the remaining motions. Segarra then moved for a severance as well as for an order suppressing the two statements given by the defendant. Both of these motions were denied and on May 9, 1960, the case was called to trial before Judge Joseph Drucker.

Prior to trial the following colloquy took place between a Mr. Flaherty of the Public Defender's office and the trial judge:

"MR. FLAHERTY: Your Honor, I understand the court sheet shows that the Public Defender has been appointed in this case to assist counsel here in the case.

THE COURT: Who did that, Judge Hershenson?

MR. FLAHERTY: Yes, that is what I understand.

THE COURT: It has come to the attention of the Court that there is an order entered showing that the Public Defender has been appointed to assist defense counsel Manuel Segarra in the defense of this case, however, the record should show that the assistance is to merely be advisory assistance since the Public Defender has not been called in to assist in the preparation of the case and is being asked by counsel Segarra merely to sit with him and advise him as to legal steps during the course of the trial and not to participate in any way in the activity of the trial.

MR. FLAHERTY: That's right, Judge. I might apprise

the Court I know nothing about the factual situation here and anything else about the case. I will give whatever assistance I can in a legal way."

Following this conversation the case proceeded to trial before a jury resulting in defendant's conviction for the murder of Guido J. Garro.

Defendant first contends that his constitutional right to counsel was violated by the manner in which the court responded to his attorney's petition requesting either leave to withdraw or the assistance of co-counsel. He particularly urges that once Judge Hershenson had appointed associate counsel to assist Segarra at the hearing on the motion to suppress, it was error to allow Segarra to proceed alone in view of his admission of inexperience. As we have pointed out earlier, after Judge Hershenson had informed Oakey that the Public Defender's office was to assist Segarra, Oakey and Segarra entered into a discussion, the contents of which was off the record. We are unable to determine therefore the reason behind Judge Hershenson's decision to allow Segarra to proceed alone. We do not agree with the defendant, however, that this decision in and of itself would warrant reversal. There is no doubt but that a defendant is entitled to effective representation at such a critical stage of the proceedings as a motion to suppress, but any claim that such effective representation was denied must be supported by the record. The only factor which defendant discusses with regard to the motion to suppress is that his privately retained counsel admitted to inexperience. While it is true that inexperience may result in incompetence, it is not necessarily equated with it. Defendant relies on *People* v. *Blevins,* 251 Ill. 381, 390, where the court stated: "Oppression may result to a defendant defended by young and inexperienced counsel where he is prosecuted by an array of experienced and able attorneys, * * *." The court in *Blevins* went on, however, to point out the "record shows that by reason of the inexperience

of plaintiff in error's counsel incompetent evidence of a highly prejudicial nature was introduced by the prosecution on the trial." No such examples of incompetency at the motion to suppress have been set forth by the defendant. He urges us, rather, to speculate as to the psychological disadvantage at which his counsel was placed by reason of his inexperience. A claim of prejudice, however, cannot be based upon mere conjecture. (*People* v. *Kelley*, 23 Ill.2d 193.) Despite the fact that defendant has mentioned no specific examples of incompetency, we have reviewed the record and conclude that defendant was adequately and fully represented by counsel. In the absence of any showing of incompetency, we cannot agree that the mere inexperience of his privately retained counsel resulted in prejudice to the defendant.

Turning to the trial itself, defendant argues that even though Segarra was assisted by an attorney from the Public Defender's office, this assistance was ineffectual since co-counsel admittedly was not familiar with the facts of the case. Although this is a factor to be considered in examining the record, it is not determinative of the issue of whether or not defendant was deprived of any rights. "Substantial prejudice resulting from incompetent representation must be shown in order for us to reverse the conviction." (*People* v. *Robinson*, 33 Ill.2d 391.) We have scrutinized the record and conclude that, by virtue of his representation both by Segarra and by co-counsel, defendant's contention that he was substantially prejudiced is without merit.

Defendant next charges that Judge Hershenson erred in denying his motion to suppress the two statements given on October 28 and 29 at the North Avenue police station. We have no quarrel with defendant's statements of the law relating to confessions, however, the testimony clearly indicates that the confessions were voluntary and not the result of any deprivation of defendant's rights, and the defendant's arguments to the contrary are without merit.

The one point worthy of comment is defendant's contention that he may have been intimidated by the presence of a priest at the taking of the statement on October 28. He argues that "the presence of the priest *could* have made him believe that the police were acting legally and properly in holding and questioning him since a representative of the Church was present, because if the police were acting improperly the priest would not acquiesce in the treatment he was getting." (Emphasis supplied.) It should first be noted that this contention is entirely speculative, as are the majority of those argued by the defendant in support of his claim that the statements were made involuntarily. In the absence of any showing that the presence of the priest, with whom he had no conversation, resulted in defendant's signing a statement against his will, we see no reason to disturb the finding that the statement was given voluntarily. It is our opinion that defendant's original motion to suppress was properly denied.

During the course of the trial before Judge Drucker, defense counsel again challenged the admissibility of the two statements given by the defendant on the ground that they were given involuntarily. Judge Drucker thereupon commenced a hearing during which the defendant admitted signing some papers in the police station but denied having any knowledge of their contents. He further denied telling the police that he had fired the shotgun. The State's Attorney thereupon moved that the statements be admitted into evidence, relying upon the decision in *People* v. *Hegovic,* 348 Ill. 58, where the court held that where a defendant denied having made a confession it is not necessary for the trial court to determine the question of the voluntary nature of the alleged confession. Judge Drucker subsequently denied the second motion to suppress and defendant now contends that he was deprived of a full hearing on the voluntariness of the two statements.

It is true, as the defendant points out, that the holding

in *Hegovic* was subsequently overruled by *People* v. *Norfleet,* 29 Ill.2d 287. There we held, on the basis of *Lee* v. *Mississippi,* 332 U.S. 742, 92 L. Ed. 330, 68 S. Ct. 300, that even though a defendant denied making a confession, he is entitled to a full hearing on the voluntary nature of an alleged confession should he so desire. Nor do we agree with the State that *Norfleet* should be applied only to cases tried after that case was handed down in 1963. Our language in *Norfleet* clearly indicates that the 1948 decision of the United State Supreme Court in *Lee* v. *Mississippi* "abrogated the *Hegovic* rule" and that consequently in any case tried after *Lee* a defendant is entitled to a full hearing even though he had denied making a confession.

Although the trial court may have relied on *Hegovic,* we are of the opinion that the defendant was not deprived of due process since the defendant had already received a full hearing on the question of the admissibility of his statements before Judge Hershenson. While it is true that a decision as to the voluntary nature of a confession is not final until a final judgment is entered (*People* v. *Fox,* 319 Ill. 606), we do not believe that this fact entitles a defendant to a full-scale hearing each and every time he decides to question the admissibility of confessions or statements. The record clearly shows that defendant was accorded a full and proper hearing on his motion to suppress before Judge Hershenson and we, therefore, conclude that Judge Drucker's ruling resulted in no constitutional deprivation of defendant's rights.

Defendant's next contention is that a shotgun claimed to be the death weapon was erroneously admitted into evidence. While the shotgun was not found in defendant's possession, this fact is not determinative of the issue of admissibility. (*People* v. *Bernette,* 30 Ill.2d 359.) "The basic problem is one of relevance" and a gun "is relevant if there is evidence to connect it with the defendant and with the crime." (*People* v. *Jones,* 22 Ill.2d 592, 599.) Here the de-

fendant admitted to riding in a car with Feuril Cruz on the night of the shooting and to firing the shotgun supplied by Cruz into a group of men at the site where Garro was killed. Defendant further testified that immediately after the shooting Cruz took the shotgun to a friend's home for safekeeping. The testimony of Tomasita Borges, called by the prosecution, established that at approximately eleven o'clock on the night of the shooting Cruz brought the shotgun to her home and asked her to keep it for him. This weapon was subsequently removed from Miss Borges's home by the police. Based upon these facts we find no error in the trial court's determination that there was sufficient evidence to connect the weapon both with the murder and with the defendant.

The defendant contends that there was sufficient evidence in the record from which the jury could have found him to have been so intoxicated on the night of the shooting as to suspend his power of reason and that, therefore, the trial court should not have refused to give an instruction on manslaughter. In order to raise the defense of drunkenness as a defense to a crime requiring intent, the accused must show that this drunkenness existed to such a degree as to render the accused wholly incapable of forming such intent. (*People* v. *Hare,* 25 Ill.2d 321; *People* v. *Brislane,* 295 Ill. 241.) The defendant testified that on the evening of the crime he had a considerable amount of liquor and, in fact, fell asleep in the automobile after the killing.

We have repeatedly held that where the evidence clearly demonstrates that a killing was murder the giving of a manslaughter instruction is erroneous. (*People* v. *Latimer,* 35 Ill.2d 178; *People* v. *Marsh,* 403 Ill. 81.) Here the defendant's own statements show that he intentionally fired the shotgun into a group of men standing in front of a tavern. It is not necessary to show that he formed an intent to kill any particular person since there can be no question but that the natural tendency of this act would be to destroy an-

other's life. In a situation such as this the criminal intent to murder may be implied from the character of the act. (*People* v. *Latimer,* 35 Ill.2d 178; *People* v. *Winters,* 29 Ill.2d 74.) Furthermore, the coherent and detailed nature of the statements themselves clearly indicate that the defendant had a cognizance of the events immediately prior to the shooting which belies any arguments that his power of reasoning had been suspended. (See *People* v. *Hare,* 25 Ill.2d 321.) We believe that the evidence clearly demonstrates that the killing was a murder, and that consequently no error was committed by the trial court's refusal to give an instruction on manslaughter. *People* v. *Latimer,* 35 Ill.2d 178.

Defendant finally contends that he was prejudiced in his right to a fair trial by certain remarks made by the prosecutor during his closing argument although no objections were made to the remarks. We have carefully examined the closing arguments and while certain references to the deceased's family and the nature of the killing may have been unduly emotional, the remarks were not unsupported by the record and taken as a whole did not prejudice the defendant.

In conclusion we find that the judgment of conviction is supported by the record and, having failed to find any prejudicial error, we affirm the judgment of the circuit court of Cook County. *Judgment affirmed.*

Mr. Justice Ward took no part in the consideration or decision of this case.