(No. 58570.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ELDRIX ARNOLD, Appellee.

*Opinion filed October 3, 1984.—Modified on denial of rehearing November 30, 1984.*

Neil F. Hartigan, Attorney General, of Springfield,

and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry, Marie Quinlivan, and Randall E. Roberts, Assistant State's Attorneys, of counsel), for the People.

Steven Clark, Deputy Defender, and Karen Michels, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE CLARK delivered the opinion of the court:

Defendant, Eldrix Arnold, was arrested on March 18, 1980, and charged with three counts of murder pursuant to sections 9—1(a)(1) through (3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1(a)(1) through (3)). The defendant was also charged with armed robbery and armed violence. The armed-violence count was nol-prossed. A jury in the circuit court of Cook County found the defendant guilty of armed robbery and returned a general verdict finding the defendant guilty of murder. Defendant Arnold was sentenced to concurrent terms of 40 years' imprisonment for murder and 20 years for armed robbery. The appellate court reversed Arnold's conviction (113 Ill. App. 3d 1162) in a Rule 23 order (87 Ill. 2d R. 23), and we granted the State's petition for leave to appeal (87 Ill. 2d R. 315(a)). We now reverse and remand to the appellate court.

Two issues are presented on appeal: (1) whether the trial court erred in giving a non-Illinois Pattern Jury Instruction (hereinafter cited as non-IPI) on voluntary intoxication in lieu of Illinois Pattern Jury Instruction (IPI) Criminal, No. 24.02 (1968), which the defense tendered; and (2) whether the trial judge erred when he refused to give a verdict form of "not guilty of involuntary manslaughter" to the jury.

Nina Williams, Renee Martin, Debra Johnson, and

Lanita Foster were volunteers for a political candidate in the city of Chicago. The four women spent the evening of March 14, 1980, at the candidate's campaign headquarters. They left the headquarters at approximately 1 a.m. on the morning of March 15, 1980, and began walking towards Williams' car, which was parked on a city street. Two men were walking towards the women. One of the men was defendant Arnold; he testified that he and a friend had just left Fannie's Tavern when they heard the voices of the women. Arnold approached them and asked for a cigarette. Debra Johnson told Arnold they did not have cigarettes. The women then began to enter Williams' car. As they did, the defendant pushed Lanita Foster into the car. The defendant partially entered the car as well. Martin, Foster and Johnson testified at the trial that the defendant pointed a silver-colored handgun at the back of Nina Williams' head. Johnson testified that she saw Arnold pull the trigger and shoot Williams in the head. After Arnold shot Williams, he told the women to "give-up" the money. Johnson then threw Williams' purse to Arnold. He caught the purse and ran down the street.

The three eyewitnesses testified that the defendant did not slur his words and had no difficulty running from the scene. In addition, the eyewitnesses testified that they did not see either the defendant or the other man with bottles of alcoholic beverages in their possession, nor did they see the two men emerge from the corner tavern.

Arnold was arrested on March 18, 1980. At the time of his arrest, Arnold signed a written statement in which he admitted his intention to rob the women and to frighten them with the gun. In his statement, he also said that he had spent the money he had to buy milk and Pampers for his daughter. Arnold also showed the police where he had hidden Williams' purse and the gun. The

police recovered both items.

At trial, Arnold testified he was intoxicated at the time of the shooting. He testified that he had smoked marijuana and consumed seven gallons of wine on March 14, 1980, as well as various quantities of gin, vodka and rum.

With regard to the shooting, Arnold testified that he was with a friend the morning of March 15 and that the friend asked him for a cigarette. Even though Arnold had an extra cigarette, he approached the four women to ask for a cigarette for his friend. In addition, Arnold testified that he was transferring the gun from one hand to the other when the gun accidentally went off. He also contradicted his written confession of his intent to rob the women, testifying that he decided to ask for money only after the gun went off.

The State cross-examined Arnold about his activities immediately prior to the shooting. Arnold testified that he had visited his mother's apartment at 11 p.m. on March 14, and played records on her stereo. Arnold was able to unlock the door to his mother's house and change records on the stereo without assistance. Arnold also testified that he went to Fannie's Tavern at 11:30 p.m., spoke with a woman there and shared some of the woman's drink. When asked if he recalled what kind of drink it was, he stated that it was a rum and coke. Defendant also testified that he purchased a bottle of wine at Fannie's Tavern. He was able to recall the exact denominations of change he received. In addition, Arnold was able to recall the amount of money he had in his wallet as well as the denominations of the bills.

At trial, there was testimony that the defendant, who was 21 years' old, had been drinking alcohol heavily since he was 13, that he had received treatment for his alcoholism and that he had attended Alcoholics Anonymous meetings for a short time. Four defense witnesses,

Arnold's mother, his common-law wife, and two friends, testified that they had seen Arnold on March 14, 1980, and that, in their opinion, Arnold was drunk.

Defendant's expert witness, Dr. Donald Sellers, testified that Arnold could have been intoxicated in the early morning hours of March 15. However, when asked a hypothetical question during cross-examination Dr. Sellers conceded that Arnold could have acted knowingly and intentionally at the time of the shooting.

We now address the first issue in this case, whether the trial court erred in giving the non-IPI voluntary intoxication instruction, in lieu of IPI Criminal No. 24.02, which the defense tendered.

The court gave the following instruction on voluntary intoxication: "Voluntary intoxication is not a defense to armed robbery or murder committed during the course of an armed robbery or involuntary manslaughter." The defense tendered IPI Criminal No. 24.02, which provides: "An intoxicated person is criminally responsible for his conduct unless his intoxication renders him incapable of acting knowingly [or] intentionally."

A trial judge has the discretion to refuse to tender a defense instruction on intoxication where there is insufficient evidence for a jury to reasonably find that the defendant was so intoxicated at the time of the crime that he lacked the requisite mental state for the crime. *People v. Williams* (1973), 14 Ill. App. 3d 789, 794.

In *Williams,* the defendant was charged with murder and intimidation. He was convicted of both. On appeal, the defendant contended that the trial court erred when it refused to give a tendered defense instruction on intoxication. At trial, there was testimony by police officers, a baby-sitter and the defendant's brother and sister-in-law that the defendant appeared to be drunk the morning of the shooting. The defendant testified that he had been drinking, as well. However, the baby-sitter, an

eyewitness to the shooting, testified that the defendant had said he would make the shooting look like a suicide. She also testified that although the defendant appeared drunk when he arrived home, he did not require any support, he was not falling over his feet, and he did not mumble his words.

The court in *Williams* said: "Although the evidence tends to establish that defendant had been drinking, that is not enough to require that an instruction on intoxication be given. There is nothing in the record to suggest that defendant was so intoxicated as to negate the requisite mental state for murder." (*People v. Williams* (1973), 14 Ill. App. 3d 789, 793.) The appellate court held that the trial court did not abuse its discretion when the trial court refused to give the tendered defense instruction on intoxication.

In the instant case, as in *Williams,* even though there was some evidence that the defendant had been drinking, that fact alone was not enough to require the trial court to give an instruction on intoxication. The record does not suggest that the defendant was so intoxicated that the intoxication negated the requisite mental state for the crimes he committed.

The defense introduced the testimony of the defendant, his mother, his common-law wife, and two friends to establish that the defendant was intoxicated on March 14, 1980, and the early morning hours of March 15.

The State, on the other hand, produced the three eyewitnesses to the shooting. They testified that Arnold's gait and speech were not impaired as he approached and asked for a cigarette or when he demanded money. They also testified that the defendant caught the purse in mid-air and fled down an icy street without falling.

Besides the facts regarding Arnold's physical abilities at the time of the shooting, Arnold had a detailed memory of the events leading up to the shooting. He remem-

bered the exact amount and denominations of change he received when he purchased wine shortly before the shooting. He also entered his mother's apartment and selected albums to play on her stereo without any assistance. Immediately after the shooting he had the presence of mind to hide the purse and the gun; three days later he remembered the location of both.

The most significant testimony, however, was from the defendant's expert. A hypothetical question was posed to Dr. Sellers during direct examination. The hypothetical question included facts regarding the defendant's history of alcoholism and his consumption of alcohol on March 14, and March 15, 1980. Asked what his opinion was regarding whether the hypothetical man was intoxicated, the doctor answered, "It's my opinion that he was intoxicated." Then questioned regarding his opinion whether the intoxication would render the hypothetical man incapable of acting knowingly or intentionally the doctor answered, "It's my opinion that he would not be able to react intentionally and knowingly."

However, during cross-examination, the State asked the defendant's expert to assume the facts given during direct examination plus additional facts of the defendant's activities before, during and immediately after the shooting. With these additional facts, the following exchange took place:

"Q. Assuming all those facts, do you have an opinion based upon a reasonable degree of medical certainty as to whether this hypothetical man was able to act intentionally or knowingly at the time of the shooting?

A. Yes.

Q. What is the opinion?

A. That he was able to act knowingly and intelligently. So I had to change my opinion."

The opinion of the defendant's expert, plus the coherent and detailed nature of the defendant's memory,

"clearly indicate that the defendant had a cognizance of the events immediately prior to the shooting which belies any arguments that his power of reasoning had been suspended." (*People v. Gonzales* (1968), 40 Ill. 2d 233, 242.) We hold that the trial court did not err when it refused to give IPI Criminal No. 24.02.

Since we have decided that the trial judge did not abuse his discretion when he refused to give the defendant's instruction on voluntary intoxication, we need not discuss the defense of voluntary intoxication with respect to specific-intent and general-intent crimes.

We now consider the second issue raised in this appeal: whether the trial judge erred when he refused to give a verdict form of not guilty of involuntary manslaughter to the jury. Defendant's argument on this point is without merit. When the trial judge refused to submit the proffered verdict form to the jury, no objection was raised. Alleged errors not preserved by objection are normally waived for purposes of appeal. *People v. Pastorino* (1982), 91 Ill. 2d 178, 188.

Even if we considered the merits of this argument, we could find no basis for a new trial. Defense counsel told the jury in his closing statement that Arnold was guilty of involuntary manslaughter:

> "Ladies and gentlemen, Joe Arnold was reckless on the night of March 14th and March 15th. There is no doubt about that. But keep in mind, during your deliberation, that recklessness entails a mental state involving a degree of criminal liability below that of intent or knowledge.
>
> * * *
>
> His reckless transfer of the gun, on the icy street, in his drunken condition, makes him criminally liable. We have never denied that. But only to the offense of involuntary manslaughter. He was acting recklessly on an icy street with the gun."

A defendant who admits culpability for a crime cannot expect to have the jury instructed concerning his innocence of the crime. The trial judge properly refused to submit a not-guilty-of-involuntary-manslaughter verdict form to the jury. See *People v. Flanagan* (1930), 338 Ill. 353.

We therefore conclude that the trial judge properly instructed the jury at the conclusion of the trial. For the reasons set forth, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

Because of the decision that the appellate court reached in this case, it did not determine whether the defendant's sentences for murder and armed robbery were excessive. Therefore, we remand this cause to the appellate court for a determination of this issue.

*Reversed and remanded,*
*with directions.*