THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JUAN GOMEZ, Defendant-Appellant.

First District (5th Division)   No. 83—0968

Opinion filed March 14, 1986.

Robert L. Rascia and R. Anthony Rascia, both of Nicholas A. DeJohn & Associates, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Thomas P. Needham, and Robert C. Buckley, Jr., Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following convictions in a jury trial of attempted murder and two counts of aggravated battery, defendant was sentenced to concurrent terms of 25 years for attempted murder and five years for one of the aggravated battery counts. On appeal, it is contended that: (1) his guilt was not proved beyond a reasonable doubt; (2) the trial court erred in (a) refusing his jury instruction on intoxication and (b) denying a motion to suppress his statement; and (3) his 25-year sentence for attempted murder was excessive.

It appears that after a fight broke out in the La Costena Tavern between two members of defendant's party and a group of three other individuals, defendant began firing his gun at two of the latter group.

Jose Mancha, who was wounded by the shots, testified that he went into La Costena around 12:10 a.m. on January 26, 1981, accompanied by Hubaldo Rodriquez and Eleazar Torres. After ordering drinks, they sat at a small table near the pool table. David Sanchez and Martin Gallegos, members of defendant's party, were playing pool nearby and defendant was seated at the bar. Sanchez asked Mancha to play pool and upon his refusal, an argument started during which Sanchez hit him. Mancha at that point heard some shots "that hit me in both legs." Neither he or any in his group struck defendant or had any conversation with him. After he was shot, Mancha went to the washroom and didn't come out until the fight was over. He stated that defendant had been drinking but he could not say whether he was drunk.

Hubaldo Rodriquez first testified to convictions of misdemeanor theft in 1977 and burglary in 1978 and then stated that after Sanchez struck Mancha when he refused to play pool, Rodriquez heard shots and turned to see defendant with a gun in his hand. He heard more shots, and when he realized that he had been shot in the hip he picked

up a small table to protect himself but defendant shot him in the right knee and then in the left hand. As he ran to the other side of the room, defendant shot him in the stomach twice and after he got under the pool table defendant fired another shot at him which missed. Neither he, Torres or Mancha had any conversation with defendant before Mancha was shot, and the fight which broke out did not involve defendant in any way. On cross-examination, he stated that he considered himself to be a friend of defendant and had never argued with him during the three years he had known him. He heard a total of eight shots and did not see anyone other than defendant with a gun. After the first shots defendant was always in his vision, and he never saw him knocked to the floor nor did he see anyone kicking defendant in the head or ribs. Although he saw defendant with a drink, he did not know how many he had and he did not seem to be drunk.

Eleazar Torres testified that he left the table while the others were arguing about playing pool and sat at the bar about four seats from defendant. When the fight began, defendant walked toward the four men who were fighting, and he saw defendant shoot at Mancha and Rodriquez. He tried to get defendant to put the gun away, but defendant pushed him aside and continued firing. When Torres saw that the gun was empty, he hit defendant with a cue stick and defendant then struck him with the empty gun but dropped it when Torres hit him a second time. On cross-examination, he stated that Mancha and Rodriquez fought with Sanchez and Gallegos after Mancha was initially struck by Sanchez but that none of the others were involved in the fight.

Steve Moreno, after testifying that he had pled guilty to a charge of delivery of a controlled substance in 1976, stated that he was in La Costena with a friend and saw defendant with a drink. He said, however, that defendant did not have any conversation with Mancha, Rodriquez or Torres prior to the shooting and when the fight began he started to break it up but stopped when the shooting started. He saw defendant walk over to the table when the fight started and begin firing. When defendant ran out of the tavern, he chased him, brought him back to the tavern and kept him there until the police arrived. He stated that when defendant left his seat at the bar to fire at the victims, he was walking straight and there was also nothing unusual about his gait when he ran out of the bar after the shooting. On cross-examination, Moreno stated that he and the bar owners were friends but that he did not work there; that Mancha, Rodriquez, and Torres were regular customers but he had never seen defendant before that night. Moreno watched the entire altercation and saw about

four punches exchanged. He did not remember telling the police that Rodriquez threw a small table at defendant and stated that Rodriquez had not done so.

Officer Koclanis testified that when she arrested defendant at La Costena, he had blood on his face and his clothing. She retrieved the .45-caliber automatic revolver from the bartender and gave it to her partner who observed that the clip was empty. On cross-examination, she stated that the tavern was "messy" but she did not notice any broken windows and did not recall seeing any upended tables. She did notice some broken cue sticks and some chairs strewn about. She did not detect any alcohol on defendant's breath either at the bar or during the subsequent interview at the police station.

Douglas Rathe, an assistant State's Attorney, testified that he and Detective Hayes spoke to defendant between 3 and 3:30 a.m. through Steve Moreno, who acted as an interpreter. Rathe gave an opinion that defendant was not drunk at the time of the questioning, stating that defendant did not sway when he walked toward him from a distance of about 20 feet away and that he detected no odor of alcohol on his breath. Defendant's *Miranda* rights were explained to him through Moreno who stated that defendant gave answers that he understood each of them and that he was willing to talk to Rathe. Defendant then stated, through Moreno, that he was in the tavern in the early morning hours and that he fired his gun at people in the tavern but that he did not know why he had done so. He had bought the gun earlier that day from someone he did not know.

Martin Gallegos, a defense witness, testified that he and Sanchez arrived at La Costena between 9 and 10 p.m. and sat at the bar. Defendant came in later and sat with them for about a half hour when Gallegos and Sanchez left to play pool. Later Mancha and Rodriquez sat down next to the pool table and when Mancha and Sanchez started arguing Mancha hit Sanchez and the four men began to fight. Other people who joined in the fight struck him and Sanchez, but they did not hit Mancha or Rodriquez. When defendant left his seat at the bar and went towards the fight, four or five people jumped him, knocked him down and kicked him as he was lying on the floor. Defendant's face and shirt were bloody. He noticed that defendant then knelt on the floor holding the gun and when he heard the first two shots, he ran out of the bar. On cross-examination, he stated that neither Mancha nor Rodriquez had talked to defendant prior to the fight.

Detective Thiede, one of the officers who went to La Costena, testified that the entire room was in disarray and that he saw tables and

chairs knocked over, a broken window, broken drinking glasses and several broken cue sticks. Defendant was bandaged and bloody when detective Thiede spoke to him and he noticed a "slight odor of alcohol." Moreno told him that defendant had stopped firing at one point, but when Rodriquez threw a small table at him, he began to fire again.

Barbara Malloy, the head nurse at the St. Anthony's emergency room where defendant was treated, testified that defendant had a laceration on his forehead and a bruise on his right eye. He told her, through an interpreter, that he had been struck with a pool cue. She noticed that he had been drinking "by the way he acted and the way he spoke." He also "smelled of alcohol."

OPINION

Defendant initially contends that he was denied his right to a fair trial where the trial court refused his instruction on the defense of intoxication. Both attempted murder and aggravated battery are specific intent crimes (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4(a), 12—4(a)), and voluntary intoxication is a defense to a crime if the condition of intoxication negates or makes impossible the existence of the mental state which is an element of the crime. Ill. Rev. Stat. 1979, ch. 38, par. 6—3(a).

■ In order to assert intoxication as a defense to a crime requiring intent a defendant must show that his condition was such as to render him "wholly incapable of forming such intent." (*People v. Gonzales* (1968), 40 Ill. 2d 233, 241, 239 N.E.2d 783, 789.) Proof of intent requires more than evidence that defendant consumed some alcohol (*People v. Shackles* (1977), 44 Ill. App. 3d 1024, 358 N.E.2d 1329), and evidence of alcohol on a defendant's breath is in itself insufficient proof of intoxication. *People v. Clark* (1970), 123 Ill. App. 2d 41, 259 N.E.2d 636.

■ Our review of the record here reveals that while there was testimony that defendant had been drinking there was no testimony from any witness that defendant was intoxicated or that he even appeared to be so. Rodriquez testified that he saw defendant with a drink but he did not seem to be drunk. Moreno saw him drink three or four beers but observed that he walked straight when he left the bar and walked to the table where he began firing at the victims and that there was nothing unusual about defendant's gait as he ran from the tavern after the shooting. Gallegos said only that he heard defendant order two drinks. Officer Koclanis did not detect any odor of alcohol on defendant's breath either at the tavern or later at the police

station. Assistant State's Attorney Rathe testified that defendant's walk was normal as he watched defendant approach from about 20 feet away and that he did not smell of alcohol on his breath when he spoke to him. Detective Thiede, a defense witness, noticed only a slight odor of alcohol when he spoke to defendant at the tavern. Nurse Malloy said that defendant smelled of alcohol and appeared to have been drinking. There is, however, no testimony in the record to indicate that defendant's mental processes were so impaired that his power to reason was suspended. In fact, it appears from defendant's own actions that the offenses were committed by him in a knowing and purposeful manner from the fact that he did not run but walked in a normal manner from the bar to the place of the argument and that seven of his eight shots struck the intended victims even though there were as many as 30 people in the tavern. Under these circumstances, we conclude that there was no error in the refusal of the instruction in question.

Defendant also maintains that because the trial court improperly cut off questioning of Mancha he was unable to show a statement by Mancha at the suppression hearing that defendant was drunk at the time of the occurrence. However, we note that at the suppression hearing when Mancha was asked why he thought defendant was drunk, he answered that he said defendant was drunk "cause he was drinking there." As stated above, the fact that defendant had been drinking in itself does not justify the giving of the intoxication defense instruction, and we find no prejudice to defendant because he was unable to question Mancha about his statement at the suppression hearing.

Defendant next contends that the prosecution did not establish his guilt beyond a reasonable doubt because proof of intent was lacking. In support thereof, defendant relies primarily on his argument that the trial court's refusal to give the intoxication instruction negated a major defense theory and that such refusal cannot be considered harmless error. We have found, however, that the trial court properly refused the instruction and the major focus of defendant's reasonable doubt argument is thus without merit. While defendant also argues that the prosecution witnesses lacked credibility, it is well established that determination of credibility is a function of the jury (*People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 283, 105 S. Ct. 2666), and the jury's determination of the weight and sufficiency of the evidence thereof will not be reversed unless it is so improbable as to create a reasonable doubt of defendant's guilt (*People v. Davis* (1983), 95 Ill.

2d 1, 447 N.E.2d 353, *cert. denied* (1983), 464 U.S. 1001, 78 L. Ed. 2d 697, 104 S. Ct. 507). The specific intent to kill, the essence of attempted murder, may be inferred from the use of a deadly weapon as well as from the general character of the assault (*People v. Lindsey* (1979), 72 Ill. App. 3d 764, 391 N.E.2d 382), and here, in the light of the testimony outlined above and considering defendant's use of a deadly weapon, we find that intent to kill was sufficiently established and that defendant's guilt was proved beyond a reasonable doubt.

◼ Defendant additionally contends that the trial court erred in refusing to suppress the statement made to Assistant State's Attorney Rathe at the police station and in allowing Rathe to testify concerning the statement given to him rather than requiring the interpreter to do so. He initially argues that Steve Moreno, an occurrence witness, who testified at trial and was a friend of the tavern owners, was improperly used as a Spanish interpreter for the statement in question. In support of this argument, he relies on *People v. Allen* (1974), 22 Ill. App. 3d 800, 317 N.E.2d 633, where this court found that, under the particular circumstances of the case, it was reversible error for a certain individual to serve during trial as an Arabic interpreter. In addition to witnessing the incident and testifying at trial, as a court witness, the interpreter in *Allen* was a friend of the victim and there was some indication that the interpreter might have been involved in the incident.

Here, Moreno was not the trial interpreter and there was no indication that he was involved in any wrongdoing that evening. He was used as an interpreter during the initial investigation within a few hours after the occurrence, and there is nothing to indicate that the translation given to Rathe was not accurate as the substance of the statement—that he had fired the gun at some people in the tavern—was testified to by all the occurrence witnesses. Under the circumstances we see no prejudice to defendant in the refusal to suppress the statement to Rathe because of the interpreter used.

◼ Concerning defendant's further argument that Rathe, the assistant State's Attorney, was improperly permitted to testify concerning the statement of defendant as it was translated to him, we note that a person conversing with a third person through an interpreter is not qualified to testify to the other person's statements because he knows them only through the hearsay of the interpreter who, ordinarily is the only person who may testify to the third person's words. *People v. Torres* (1974), 18 Ill. App. 3d 921, 310 N.E.2d 780. See also 3 Wigmore, Evidence sec. 812(3) (Chadbourn rev. ed. 1970).

Even where such testimony is improperly admitted, however, re-

versal is not required where the matters referred to in the statement have been proved by properly admitted evidence. (See *People v. Torres* (1974), 18 Ill. App. 3d 921, 310 N.E.2d 780.) The testimony concerning the statement was as follows:

> "[Assistant State's Attorney]: He, being Gomez, again this is through the interpreter, Gomez told me that he was in the tavern in the early morning hours and at that time he had a gun. He was in the tavern and he shot the gun while he was in the tavern.
>
> He told me that he did not know why he was firing the gun, but he was firing the gun at people in the tavern. ***."

This statement establishes only that defendant was the individual who shot the victims in the tavern. Defendant has never contested that fact and as stated above, the testimony offered by both parties showed that he shot the victims. Defendant proceeded entirely on the basis of two defenses, intoxication and self-defense. We have previously found his attempt to invoke an intoxication defense lacked even sufficient evidentiary support to justify a jury instruction on the issue. We also note that his statement contains absolutely no information with respect to the altercation in the tavern on which defendant bases his theory of self-defense. When erroneously admitted evidence does not tend to prove an element of the crime not established by other properly admitted evidence, the error does not contribute to a finding of guilt (*People v. Bundy* (1979), 79 Ill. App. 3d 127, 398 N.E.2d 345), and here, where defendant's statement had no bearing on the findings, its admission was harmless error. See *People v. Taylor* (1984), 101 Ill. 2d 508, 463 N.E.2d 705, *cert. denied* (1984), 469 U.S. 866, 83 L. Ed. 2d 140, 105 S. Ct. 209.

■ Defendant finally contends that his 25-year sentence for attempted murder was an abuse of discretion on the part of the trial court. We disagree. It is initially noted that the trial court's decision regarding sentencing is entitled to great deference (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882), and that defendant's sentence here is not only within the statutory range but also five years less than the statutory maximum (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4(c)(1), 1005—8—1(a)(3)). Defendant argues that the trial court was unable to consider the appropriate factors because the presentence investigation was prepared without an interview with defendant who had fled the jurisdiction. Defendant, however, is precluded from arguing about the incomplete nature of his presentence report since it was the result of his absence from the jurisdiction (*People v. Lane* (1980), 91 Ill. App. 3d 827, 414 N.E.2d 1249), and the trial court could con-

sider his observations of defendant during trial before he absented himself.

For the aforementioned reasons, the convictions and sentences are affirmed.

Affirmed.

PINCHAM and LORENZ, JJ., concur.