THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD OWEN CAMP, Defendant-Appellant.

First District (1st Division)   No. 1—87—3802

Opinion filed June 29, 1990

332

Randolph N. Stone, Public Defender, of Chicago (Bruce C. Landrum, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee G. Goldfarb and Jane E. Loeb, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Defendant, Richard Owen Camp, was charged by indictment with the offenses of burglary and criminal damage to property; the latter charge was dismissed by the State. Following a trial before a jury in the circuit court of Cook County, the defendant was found guilty of burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a)), and subsequently was sentenced to a term of 12 years.[1]

Defendant now appeals his conviction and sentence, asserting three grounds for reversal: (1) that the trial court's refusal to give the jury his tendered instruction on voluntary intoxication as a defense deprived him of a fair trial; (2) that he was prejudiced by the trial court's refusal to grant his request for a continuance in order to secure witnesses who would establish his defense of voluntary intoxication; and (3) that the trial court abused its discretion in sentencing defendant to 12 years' imprisonment.

Prior to trial defendant was evaluated for admittance in the Treatment Alternative to Street Crime Program (TASC). Although the evaluation found defendant to be an addict, it determined that he was unacceptable for the TASC program.

At trial, the following facts were adduced. On Saturday, May 11, 1986, at approximately 12:45 a.m., Victor Lownes of 120 North Oak Park Avenue parked his automobile in the municipal lot and walked towards his apartment when he heard the sound of breaking glass coming from the Tasty Dog restaurant. The Tasty Dog was on the southwest corner of the intersection of Euclid and Lake Streets, which was about 200 or 300 feet from where Lownes lived and between 50 and 100 feet from where he parked his car. He turned and saw the right profile of a white male of average build, in his twenties,

---

[1]The trial court had originally sentenced defendant to a term of 14 years as a Class X offender. However, upon motion by the State, sentencing was reopened. The State pointed out that defendant's convictions in the middle of 1977 should not have been included as part of the record because they occurred prior to the effective date of the Class X sentencing act.

who was wearing a blue shirt and looking into the Tasty Dog through the broken glass window. Lownes observed the man step into the restaurant through the six-foot-square window. Lownes then walked home, which took approximately two minutes, and called the Oak Park police to report the incident.

Officer Keenan Williams was on patrol that night. He was in an unmarked squad car at the intersection of Chicago and Ridge Streets when he received a radio dispatch at about 12:49 a.m. reporting a burglary in progress at 701 West Lake Street. He arrived at the scene about one minute later at which time he observed a man, whom he later identified in court as the defendant, standing behind the cash register. When the man noticed Williams, he moved toward the rear of the restaurant. Williams yelled "Police, halt," but the man exited through the rear door and commenced to run.

Following an 80-yard chase, Williams tackled the man and knocked him to the ground. With the assistance of Officer Edward Hadac, who had arrived at the scene and paralleled the foot pursuit in his patrol car, Williams handcuffed the man. He noticed cuts and bruises on the man's face, and that his breath exhaled a "strong odor" of alcohol. Officer Hadac also observed some facial injuries and bleeding but noticed "[n]othing at all unusual about his [defendant's] breath."

The parties stipulated that if called as a witness, the emergency nurse, Sandra Watson, would testify that she smelled an "odor" of alcohol on the defendant's breath while he was being treated at West Suburban hospital on the morning of May 11, 1986, for facial cuts.

During the instruction conference, the trial court denied the defense's motion to submit a jury instruction on voluntary intoxication which states: "[(An intoxicated) ([a] drugged)] person is criminally responsible for his conduct unless his [(intoxication) (drugged condition)] renders him incapable of acting [(knowingly) (intentionally)]." (Illinois Pattern Jury Instructions, Criminal, No. 24—25.02 (2d ed. 1981).) Thereafter, the jury returned a verdict of guilty, the trial court denied defendant's post-trial motion for a new trial and sentenced defendant to an extended term of 12 years in the Illinois Department of Corrections and two years' mandatory supervised release.

■ Defendant first contends on appeal that the trial court erred in refusing to instruct the jury on his defense of voluntary intoxication. It is well settled in Illinois that voluntary intoxication does not excuse criminal conduct and generally is no defense to a criminal charge. (*People v. Lion* (1957), 10 Ill. 2d 208, 214, 139 N.E.2d 757.) However, voluntary intoxication is a defense if it negatives the exist-

ence of a mental state which is an element of the offense (Ill. Rev. Stat. 1983, ch. 38, par. 6—3(a)), based upon the rationale a defendant cannot be said to be guilty if he was intoxicated to such a degree as to be unable to form an intent. *People v. Klemann* (1943), 383 Ill. 236, 239, 48 N.E.2d 957.

■■ ■ Burglary is a specific intent crime because it contains, as an element of the offense, the requirement that the defendant entered the premises with the intent to commit a theft or felony. (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a); *People v. Cabrera* (1987), 116 Ill. 2d 474, 492, 508 N.E.2d 708; see also *People v. Racanelli* (1985), 132 Ill. App. 3d 124, 476 N.E.2d 1179.) In fact, intent is the gravamen of the offense of burglary. (See *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300.) Voluntary intoxication is available as a defense to a specific intent offense where its effect is to negate the defendant's mental state where such mental state is an element of the offense. *People v. Hillenbrand* (1988), 121 Ill. 2d 537, 555, 521 N.E.2d 900.

■■ ■ Defendant argues that the evidence presented at trial was evidence, however slight, and more than ample to justify the court giving the requested instruction. The evidence he refers to is the testimony of one police officer and a stipulation of facts. Conversely, the State contends that the requirement is "some" evidence which the defendant failed to present. The parties argue extensively about the degree of evidence which is necessary to justify a trial court giving an instruction on a given theory. However, we decline to engage any further in this endeavor of semantics to discern the meanings of "any" evidence, "slight" evidence or "some" evidence because the applicable principles of law are clear. While a defendant is entitled to have the jury instructed in the defense of voluntary intoxication where there is evidence on the record of intoxication, the degree of intoxication which will absolve the defendant of criminal liability must be so extreme that it entirely suspends the power of all reason. (*People v. Stewart* (1984), 122 Ill. App. 3d 546, 550, 461 N.E.2d 591; *People v. Feagans* (1983), 118 Ill. App. 3d 991, 997, 445 N.E.2d 871.) The same test applies if drugs are the agent allegedly depriving defendant of the capacity to commit the crime. (*People v. Newlin* (1975), 31 Ill. App. 3d 735, 334 N.E.2d 349.) In order to avail himself of the defense of intoxication, the defendant must establish that his condition was such as to render him wholly incapable of forming the requisite intent. (See *People v. Gomez* (1986), 141 Ill. App. 3d 935, 491 N.E.2d 68.) The mere fact that the defendant was drugged or intoxicated does not constitute a defense of intoxication. *People v. Thompson* (1984), 125 Ill. App. 3d 665, 676, 466 N.E.2d 380.

In the present case, the evidence of defendant's alleged intoxication is as follows. The arresting police officer testified on cross-examination that he smelled a strong odor of alcohol on defendant's breath as he stood close to him. Defense counsel inquired if the officer had stated during the preliminary hearing that defendant appeared to be wavering. The officer replied that he recalled stating the defendant did stagger during that time. As previously noted, the parties stipulated that Ms. Watson, the emergency room nurse, would testify that defendant had an odor of alcohol on his breath. However, we find that the testimony and stipulation alone or in light of the record as a whole do not establish a defense of voluntary intoxication.

The record also reveals that Officer Williams testified the defendant "was not staggering when I first viewed him" and explained that "he [the defendant] appeared to be wavering after apprehension was made" because "he was probably affected by the fall." Although the statements showed defendant had been drinking, they did not support a finding that the level of intoxication so negated his mental state as to suspend all reason.

To the contrary, the facts below fail to establish that defendant lacked the capacity to appreciate the criminality of his conduct. We believe the evidence showed that defendant acted with the requisite mental state, *i.e.*, intent. The evidence established that defendant knew what he was doing when he picked up a three-foot, 20-pound canister and used it to bash in the window. He then entered the restaurant through the broken glass and immediately found the cash register behind the counter. When noticed by the police, he exited through the back door and ran southbound through the parking lot behind the building in an attempt to flee. All of these events occurred within a five-minute time span.

█ Moreover, the police officers presented testimony as to the events following defendant's apprehension. First, defendant was taken to the hospital for treatment of injuries sustained during the incident. Next, he was taken to the police station where he was booked. This took approximately six hours. However, during this time, he never lost consciousness, passed out, fell down or exhibited any other tendencies of intoxication. Based on the totality of the facts, the evidence does not establish that defendant was so intoxicated at the time of the offense that he was incapable of reasoning or forming the requisite mental intent to commit a burglary.

Even assuming that defendant was intoxicated, as defense counsel argues his mother and grandmother would have established had they been able to testify, his intoxicated condition, by itself, was insuffi-

cient to justify the court giving the proposed instruction on intoxication. Apart from defendant's separate contention that the trial court erred in denying a continuance so that he could secure witnesses who would establish his defense of intoxication, which we also find to be meritless and shall address momentarily, we hold that the evidence would not have justified a jury's determination that the defendant totally lacked the intent to commit a burglary as a result of voluntary intoxication. Accordingly, we find no error in the trial court's refusal to give the tendered instruction on intoxication. (*People v. Reynolds* (1963), 27 Ill. 2d 523, 526, 190 N.E.2d 301; *People v. Hayes* (1988), 173 Ill. App. 3d 1043, 1048, 527 N.E.2d 1342; *People v. Moon* (1982), 107 Ill. App. 3d 568, 572, 437 N.E.2d 823; see also *People v. Terry* (1987), 154 Ill. App. 3d 162, 506 N.E.2d 786; *People v. King* (1978), 58 Ill. App. 3d 199, 373 N.E.2d 1045.) A trial court has the discretion to refuse to tender a defense instruction under such circumstances. *People v. Arnold* (1984), 104 Ill. 2d 209, 214, 470 N.E.2d 981.

Defendant next contends that he was prejudiced by the trial court's refusal to grant his request for a continuance in order to secure the testimony of his mother and grandmother, who were prepared to testify at trial that he had ingested large amounts of alcohol and drugs on the day the offense occurred. He maintains that this testimony would have established that he was too intoxicated to have formulated the requisite intent to commit the crime. Thus, defendant argues that the trial court's refusal to grant the continuance constitutes reversible error because such denial impeded the preparation of his defense and kept out evidence which would have been sufficient to justify the instruction on voluntary intoxication. We reject defendant's circular argument here.

■■■ The grant or denial of a continuance rests within the sound discretion of the circuit court, and its ruling will not be disturbed on review absent a clear abuse of that discretion. (*People v. Collins* (1985), 106 Ill. 2d 237, 281, 487 N.E.2d 267.) In considering a trial court's denial of a continuance when the continuance sought to secure the presence of a witness, a reviewing court must determine: (1) the existence *vel non* of diligence on behalf of the defendant in securing the witness' presence; (2) the materiality of that evidence such that the lack thereof might affect the outcome of the trial; and (3) actual prejudice such that defendant was denied his right to a fair trial. *People v. Sargent* (1989), 184 Ill. App. 3d 1016, 1022, 540 N.E.2d 981; see also *People v. Timms* (1978), 59 Ill. App. 3d 129, 375 N.E.2d 1321.

Applying these factors to the instant case, we conclude that the

trial court did not abuse its discretion by denying defendant's request for a continuance. We have reviewed the record and found that defendant was arraigned on June 23, 1986. The first scheduled trial date was February 2, 1987. After at least 10 continuances and attempts to get defendant in the TASC program, the matter was set by agreement for a jury trial on September 22, 1987. The record shows that defense counsel failed to appear in court and the matter was held over until September 23, 1987. A scrutiny of the record shows that on the date set for trial, counsel first requested permission to "resume our [pretrial] conference and not to address the issue of trial as of yet." The matter then was passed for a conference and re-called. At this time, defense counsel advised the court that he had not "filed a formal answer" and did not "have the [witness] list." Then, counsel sought a continuance in order to secure the witnesses. He went on to state, *inter alia*, that he had not served subpoenas on certain medical personnel who would be used as witnesses; but, he made no mention of defendant's mother or grandmother.

■■ ■ This case had been on the trial calendar for 15 months prior to trial which allowed counsel adequate time to prepare a defense, issue subpoenas and secure witnesses. Thus, it cannot be said that the defendant established due diligence in securing the witnesses.

During the actual trial, defense counsel offered the stipulation of the emergency nurse and rested his case. He offered no expert testimony on the extremity of defendant's alcoholism or ability or lack thereof to function during intoxicated periods. He related to the court the unavailability of certain medical personnel but failed to mention defendant's mother or grandmother. Accordingly, it cannot be said that the court abused its discretion in denying the continuance where the defendant had not informed the court of the reason for the witnesses' absence at the time of the request for the continuance. Moreover, at the time he sought the continuance, counsel made no offer of proof to establish what the witnesses would have testified to had they been present. A defendant seeking a continuance to secure the presence of witnesses must make an offer of proof of that proposed testimony. (*Sargent*, 184 Ill. App. 3d at 1022; *People v. Boyce* (1977), 51 Ill. App. 3d 549, 559, 366 N.E.2d 914.) As defendant failed to do so here, we need not review this issue. See, *e.g., People v. Martin* (1981), 101 Ill. App. 3d 480, 485, 428 N.E.2d 591.

It was not until the hearing on the post-trial motion for a new trial that defense counsel informed the court that the witnesses were in court the first day of the proceeding but were unable to attend the trial thereafter because of a death in the family. He argued that the

witnesses would have testified as to defendant's past addiction and alcoholism and his alleged intoxication on the date of the incident. However, as previously noted, proof of even chronic alcoholism cannot exempt a defendant from criminal liability in a burglary prosecution. (See *People v. Davis* (1977), 54 Ill. App. 3d 517, 369 N.E.2d 1376.) Moreover, the fact that a defendant was intoxicated on the date of the offense, standing alone, is insufficient evidence to support a defense of intoxication. See *People v. Hurt* (1988), 175 Ill. App. 3d 970, 530 N.E.2d 698.

Notwithstanding any testimony defendant's mother and grandmother would have presented as to the defendant's state of intoxication at or near the time of the offense, we find that such evidence would not have materially affected the outcome of the trial. As stated above, we believe the facts as a whole establish that defendant acted with the requisite mental state.

██ As to actual prejudice, it must appear from a review of the entire record that the trial court's denial of a continuance resulted in the defendant's attorney not being able to adequately and competently represent him. (See *People v. Davis* (1970), 45 Ill. 2d 514, 261 N.E.2d 314.) We need not restate the facts or rationale heretofore presented. Suffice it to say that the trial court's denial of a continuance did not prevent defendant's attorney from properly representing him or cause him prejudice.

Defendant also alleges ineffective assistance of counsel. Specifically, defendant alleges that counsel's conduct may have amounted to unacceptable professional competence, which would also constitute reversible error, because of his failure to state the reason why a continuance was warranted.

██ Under the two-part test for determining claims of ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that but for the errors, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.

██ We have examined the totality of counsel's representation of the defendant here, both during trial and at the sentencing hearing. Before trial, counsel attempted to get defendant in the TASC program. He extensively questioned witnesses during cross-examination. The record also indicates that trial counsel made an opening statement, interposed objections throughout the trial, and offered a closing argument. (See *People v. Hayes* (1972), 52 Ill. 2d 170, 175, 287 N.E.2d 465.) Even assuming counsel's failure to present any evidence

as to a defense of intoxication or to inform the court of the reason his witnesses were unavailable constitutes deficient performance, we conclude that defendant did not suffer such prejudice as would change the outcome of the jury's verdict. There is no indication that the result would have been different in view of the strong evidence that defendant acted knowingly and intentionally at the time of the burglary as witnessed by several eyewitnesses. See generally *People v. Weir* (1986), 111 Ill. 2d 334, 490 N.E.2d 1.

■■ ■ Finally, defendant maintains that the trial court's sentence of 12 years was an abuse of discretion. The standard of review of a sentence alleged to be excessive is whether in fact the trial court exercised its discretion, and if so, whether this discretion was abused. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 531 N.E.2d 366.) Although imposition of a sentence is a matter within the trial court's discretion (see *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344), the reviewing court has the power and authority under Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)) to reduce a sentence. But this court generally will not do so where such sentence falls within the statutory limit and there has been no abuse of discretion. *La Pointe*, 88 Ill. 2d at 492.

■■ Our constitution mandates that penalties be determined both according to the offense and with the objective of rehabilitating the offender. (Ill. Const. 1970, art. I, § 11; see also *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 531 N.E.2d 366.) This process requires consideration of all factors in aggravation and mitigation. (See *People v. O'Neal* (1988), 125 Ill. 2d 291, 532 N.E.2d 366.) However, because it is within the discretion of the trial court, after taking in consideration the particular facts and circumstances of the case and the defendant's prior history, to impose a particular sentence (*People v. Almo* (1985), 108 Ill. 2d 54, 70, 483 N.E.2d 203), it is outside the province of this court to reweigh those factors. *People v. Arnold* (1985), 139 Ill. App. 3d 429, 436, 487 N.E.2d 997.

■■ Moreover, while the statutory classification of a crime is determinative of the range of permissible sentences, certain types of conduct may warrant different penalties under the same statute. (See generally *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.) Although burglary is a Class 2 felony (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(b)), punishable by three to seven years' imprisonment under section 5—8—1(a)(5) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38. par. 1005—8—1(a)(5)), an extended term of 7 to 14 years may be imposed (see Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2(a)(4)), where factors in aggravation as set forth in section 5—5—3.2(b) of the

Code (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)) are present.

At the sentencing hearing defendant's mother and grandmother testified that he had had a problem with drugs and alcohol for years but did well in out-patient treatment programs. The State noted defendant's numerous convictions and first recommended a Class X felony conviction. However, after reviewing the presentence report and clarifying the dates of defendant's prior convictions, the State recommended an extended-term sentence. The trial judge commented upon the need to deter others, the matters in mitigation and aggravation, and defendant's prior criminal history and sentenced him to 12 years' imprisonment.

■ After reviewing the record, which includes the mitigating and aggravating factors and the fact defendant had been under prior court supervision, numerous rehabilitative attempts had all failed (see *People v. Rogers* (1978), 64 Ill. App. 3d 290, 382 N.E.2d 1236, *aff'd* (1979), 75 Ill. 2d 593, 401 N.E.2d 1391), and defendant had previously, within 10 years, been convicted of the same or greater felony (see Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(1)), we hold that the trial court's imposition of an extended-term sentence of 12 years was not an abuse of discretion.

The judgment of the circuit court of Cook County is accordingly affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.