THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SERGIO ANDRADE, Defendant-Appellant.

First District (6th Division)    No. 1—94—1282

Opinion filed March 29, 1996.

294

Michael J. Pelletier and Yasemin Eken, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and John L. McNamara, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a jury trial in February 1994, defendant was convicted of unlawful delivery of more than 15 grams but less than 100 grams of a controlled substance and sentenced to nine years' imprisonment. This is defendant's second appeal. Defendant was first tried in May 1991, which resulted in a mistrial. He appealed and we affirmed. Defendant now appeals his conviction and sentence following his second trial, arguing: (1) he is entitled to discharge under section 103—5 of the Code of Criminal Procedure of 1963 (the Speedy Trial Act) (725 ILCS 5/103—5 (West 1994)); (2) the trial court abused its discretion in admitting evidence of other crimes; and (3) his sentence of nine years is excessive. For the following reasons, we affirm.

## I. SPEEDY TRIAL ACT

■ Defendant first contends that the trial court erred in denying his motion for discharge pursuant to the Speedy Trial Act (725 ILCS

5/103—5 (West 1994)). The Act provides in part that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103—5(a) (West 1994).

Defendant was arrested on July 23, 1990. He was charged with two counts of unlawful delivery of a controlled substance for two separate transactions, which occurred on March 23, 1989, and on May 17, 1989. The case was continued until September 26 on the State's motion. This constituted 65 days.[1] Defendant was arraigned on September 26 and sought a continuance until October 2. By agreement, the case was continued until January 30, 1991, at which time defendant demanded trial. The case was again continued at the State's request until March 26. This constituted 55 days. Thus, we agree with the trial court that March 26, 1991, was the 120th day. On March 26, defendant's counsel did not appear in court and the case was continued until April 19, with the time attributable to defendant. On April 19, now the 120th day, both parties appeared and defendant again demanded trial. The case was continued to May 16. The parties dispute which side should be charged with this time.

On May 16, defendant filed a motion for discharge pursuant to the Speedy Trial Act. The court granted the State a one-day continuance to respond to the motion. The State nol-prossed the count relative to the sale on March 23, 1989. On May 17, the court heard the defendant's motion to discharge and denied it, finding that the delay from April 19 to May 16 was attributable to defendant because he agreed to a continuance. The court then granted the State a continuance to May 21 pursuant to section 103—5(f) because defendant caused a delay within 21 days of the end of the term. On May 21, the State filed a motion to use proof of other crimes. The court continued the case to May 22. On May 22, the court conducted a hearing on the State's motion and granted it. It then continued the case to May 23. On May 23, the court continued the case to May 28 by agreement. Jury selection and defendant's first trial began on May 28.

Defendant presents three separate allegations of error in arguing entitlement to discharge pursuant to the Speedy Trial Act.

## A. APRIL 19, 1991, TO MAY 16, 1991, CONTINUANCE

Defendant first argues that the continuance from April 19 to May 16, 1991, was not attributable to him but instead to the court because of its crowded docket.

---

[1]From July 24 through July 31 is 8 days; the month of August has 31 days; and from September 1 through September 26 is 26 days.

At the hearing on April 19 the following occurred:

"MR. DIAMOND-FALK [Defense counsel]: Thank you. Your Honor, we are ready to *have this case set for trial.* \*\*\*

THE COURT: All right, counsel. I know you were demanding trial on the last Court date, what is your position today?

MR. DIAMOND-FALK: We would also continue the demand.

THE COURT: We'll set this for May 3.

MR. DIAMOND-FALK: Would it be possible to have the 1s[t] or 2nd—

THE COURT: No, I won't be here and not the 9th because it is motion state. It would have to be by agreement, if you want it other than days I am selecting I have 2 or 3 juries every week, every day.

MR. DIAMOND-FALK: If we could have—

I would be agreeable to May 9 to the 17th, any date those 2 weeks and I am sure the State will endeavor to bring this case to trial.

THE COURT: It is not that, we have 2 or 3 juries every week.

MR. DIAMOND-FALK: May 3rd is the first date.

\* \* \*

MR. DIAMOND-FALK: *We'll demand then May 3* \*\*\*.

MR. DIAMOND-FALK: I have a motion set that morning in front of Judge Berman in chancery.

THE COURT: Counsel you can't do it at that time?

MR. DIAMOND-FALK: When is the next available date[?].

THE COURT: We could try May 16. \*\*\*

MR. DIAMOND-FALK: Thank you, Judge.

THE COURT: Wait a second, by agreement, May 16, I have indicated motion State to May 3rd[ ] *but it is by agreement any other date.*

MR. DIAMOND-FALK: *Sure.*

THE COURT: *By agreement to May 16 with for trial.*" (Emphasis added.)

The half sheet also indicates the continuance was by agreement.

The parties dispute whether the above dialogue constitutes an agreement by defense counsel to a continuance. "[A]n express agreement to a continuance on the record is an affirmative act attributable to the defendant." *People v. Williams*, 272 Ill. App. 3d 868, 877, 651 N.E.2d 532 (1995). The decision as to accountability for delay is within the discretion of the trial court and should not be disturbed absent a clear abuse of discretion. *Williams*, 272 Ill. App. 3d at 877. "In reviewing speedy trial claims, this court is duty-bound to examine *both* the transcript of proceedings and the common law record so as to do complete justice to both the State and defendant[, including

the half sheets]." (Emphasis in original.) *People v. Sojak*, 273 Ill. App. 3d 579, 582-83, 652 N.E.2d 1061 (1995).

Defendant argues that the above discussion was a mere agreement to a date ordered by the court due to its crowded docket, not an agreement by the defendant to a delay of trial. Defendant cites to *People v. Beyah*, 67 Ill. 2d 423, 367 N.E.2d 1334 (1977), to support this contention.

In *Beyah*, the supreme court found that delay was not attributable to defendant because he merely agreed to a date ordered by the court. In that case, while the State was introducing defendant's criminal record during defendant's motion to reduce bond, the trial court interrupted and the following colloquy occurred:

" 'THE COURT: I will give you an early date.

MR. GOLDBERG [Assistant State's Attorney]: —served time in the House of Correction—

THE COURT: Motion for bond reduction denied. Go ahead, pick a date.

MR. GOLDBERG: I have got others.

THE COURT: I haven't got time. Pick a date. We'll give him a trial. I can't talk about bond. If you're innocent, you walk out. If you're guilty, you go to jail.

MR. WALTERS [Public Defender]: Set it down for three weeks from today.

THE COURT: How about October 18?

THE DEFENDANT: Can I get one earlier than that?

THE COURT: I can't give you one earlier than that. Motion Defendant, with subpoenas, October 18.' " *Beyah*, 67 Ill. 2d at 426.

In ruling the delay was not attributable to defendant, the court stated that defendant was seeking only a reduction in bail, not a continuance. In addition, defendant's counsel, the State, and the court were all engaged in other trials and therefore, not able to proceed immediately. Because of this, the court ordered defense counsel to "pick a date." The supreme court emphasized that this was not a case where only defense counsel was engaged in another trial and therefore could not proceed. Finally, it was the court, " 'and the court alone,' " which interjected the issue of continuing the case. *Beyah*, 67 Ill. 2d at 428, quoting *People v. Wyatt*, 24 Ill. 2d 151, 154, 180 N.E.2d 478 (1962).

■ *Beyah* is distinguishable. In the case before us, there is no evidence that the State or the court were not ready to proceed to trial immediately. Nor is there evidence that defense was ready to proceed. As is evidenced by the aforementioned colloquy, defense counsel's position on April 19 was at best ambiguous. His first statement to the court was "we are ready to have this case set for trial." This alone is

not determinative, but coupled with the remaining colloquy, it is. Although counsel stated he was continuing in his demand for trial, he did not state he was ready to proceed immediately nor did he demand trial for that day. Rather, he stated that he was ready to have the case *set* for trial. When the court began discussing alternative dates, counsel fully participated in the discussion and offered dates. He stated he would be agreeable to any date between May 9 and May 17. When the court set the case for May 3 after defense counsel agreed, he stated he would not be available. Most damaging though is counsel's last statement. When the court finally set the date for May 16, it stated that the continuance was by agreement. Defense counsel responded, "Sure." This statement is much more than merely agreeing to a date ordered by a court that had indicated it had no time for the case that day. Finally, there is no evidence, as in *Beyah*, that the court in the instant case was the one to interject the issue of continuing the case.

Accordingly, we conclude that the trial court properly attributed the delay from April 19 to May 16 to defendant. Based on this, May 16, 1991, became the 120th day.

## B. MAY 16, 1991, TO MAY 17, 1991, CONTINUANCE

Defendant next contends that even if the April 19 to May 16, 1991, continuance is attributable to him, May 17 was the 121st day.

On May 16, defendant presented a motion to discharge pursuant to the Speedy Trial Act. As determined above, May 16 was the 120th day. The trial court continued the case until May 17 to allow the State to respond to defendant's motion. Defendant contends this one-day continuance is not chargeable to him because a motion to discharge is merely the means to protect a defendant's constitutional rights and advise the court that his or her rights have been denied.

The issue of whether a motion to discharge is chargeable to defendant has been discussed by several Illinois courts with differing results. In *People v. Tamborski*, 415 Ill. 466, 114 N.E.2d 649 (1953), the court found the time necessary to process defendant's motion to discharge was not chargeable to him. However, the court cited no authority for this holding. In *People v. Moriarity*, 33 Ill. 2d 606, 213 N.E.2d 516 (1966), the court declared the rule and simply cited to *Tamborski*. In *People v. Uryasz*, 32 Ill. App. 3d 825, 336 N.E.2d 813 (1975), the court asserted the rule and cited to *People v. Kelley*, 105 Ill. App. 2d 481, 244 N.E.2d 818 (1969). However, *Kelley* stands only for the proposition that defendant's right to a speedy trial is a constitutional right. In *People v. McKinney*, 59 Ill. App. 3d 536, 375 N.E.2d 854 (1978), the court stated the rule and cited to *Tamborski*,

*Moriarity,* and *Uryasz.* In *People v. Grant,* 104 Ill. App. 3d 183, 432 N.E.2d 1129 (1982), the court cited to *Uryasz.* Finally, in *People v. Rideout,* 193 Ill. App. 3d 884, 550 N.E.2d 632 (1990), the court asserted the rule and cited to *Moriarity* and *McKinney.*

*People v. Smith,* 42 Ill. App. 3d 731, 356 N.E.2d 656 (1976), appears to be the first case to espouse the rule that the time is chargeable to defendant. However, although the cases *Smith* relied on held that time for disposition of motions was chargeable to defendant, these cases did not involve motions to discharge.

More recently, we decided *People v. Medina,* 239 Ill. App. 3d 871, 607 N.E.2d 619 (1993). Although the court in *Medina* noted that other cases had held that the time was not chargeable to defendant, it examined those cases and held to the contrary. The rule that stated the time was not attributable to defendant originated in *People v. Tamborski,* 415 Ill. 466, 114 N.E.2d 649 (1953). *Medina* found however that *Tamborski* "[did] not proclaim a general rule that the time involved in deciding a motion to dismiss on speedy trial grounds cannot or should never be charged to a defendant." *Medina,* 239 Ill. App. 3d at 878. *Medina* also noted that the rule was proclaimed in *People v. Uryasz,* 32 Ill. App. 3d 825, 336 N.E.2d 813 (1975), *People v. Moriarity,* 33 Ill. 2d 606, 213 N.E.2d 516 (1966), and *People v. Grant,* 104 Ill. App. 3d 183, 432 N.E.2d 1129 (1982). However, in *Uryasz,* the court stated the rule without citation to any authority and without any rationale for its finding. *Medina,* 239 Ill. App. 3d at 877. In *Moriarity,* the court made the pronouncement in one sentence and in *dicta. Medina,* 239 Ill. App. 3d at 878. Finally, the court in *Grant* made the same assertion but simply cited to *Uryasz* without elaboration. *Medina,* 239 Ill. App. 3d at 877. In finding that the time to process a defendant's motion to discharge may be attributed to defendant, the court in *Medina* stated, "[i]t is simply not practical to charge automatically to the State all time connected with the processing of any motion to dismiss for violation of a defendant's speedy trial rights." *Medina,* 239 Ill. App. 3d at 878. The court also cited to *Smith* and *United States v. Tedesco,* 726 F.2d 1216, 1221 (7th Cir. 1984). *Tedesco* involved the federal speedy trial act and the court there held that the delay resulting from defendant's filing a motion to dismiss for a violation of that act was excludable under the act, *e.g.,* the time was chargeable to defendant.

Finally, in *People v. Colts,* 269 Ill. App. 3d 679, 645 N.E.2d 225 (1993), the court held that a one-day delay in beginning defendant's trial which was caused by defendant's motion for discharge was attributable to him even though the motion was straightforward and required only a brief hearing.

■ Under the facts of the case before us, we find *Medina* and *Colts* more persuasive. As *Medina* stated, it is not practical to automatically charge the State for all time connected with defendant's motion to discharge. This is not to say, however, that such time is always attributable to the defendant either. The court must look at the facts and circumstances of each case. *People v. Montenegro*, 203 Ill. App. 3d 314, 317, 560 N.E.2d 934 (1990). In particular, it must look to the timeliness of the motion, the complexity of the motion, whether the facts necessary to decide the motion are readily available, and the length of the continuance. Accord *Montenegro*, 203 Ill. App. 3d at 317. Ultimately, the decision as to whom delay is attributable is within the sound discretion of the trial court and will not be reversed absent abuse. *People v. Williams*, 272 Ill. App. 3d 868, 877, 651 N.E.2d 532 (1995).

In the instant case, although the nature of the motion was straightforward and involved only the counting of days, the record shows that confusion existed along the way as to which side caused the various delays and as to which side was ready at any particular time. Moreover, the continuance was for only one day.

Additionally, based on the discussion below of 103—5(f), if delay is caused by defendant within 21 days from the end of the term, then the court can continue the cause for up to an additional 21 days. Thus, even if this one-day continuance was attributable to the State, defendant was tried within 21 days of May 16, 1991, the 120th day.

Accordingly, we conclude that the one-day continuance was attributable to defendant and alternatively, the continuance was proper under paragraph (f) of section 103—5.

### C. EXTENSION TO MAY 21, 1991, PURSUANT TO PARAGRAPH (F) OF SECTION 103—5

On May 17, 1991, the trial court granted the State an extension to May 21 pursuant to section 103—5(f). Paragraph (f) of section 103—5 states:

> "Where such delay [caused by defendant] occurs within 21 days of the end of the period within which a person shall be tried ***, the court may continue the cause on application of the State for not more than an additional 21 days beyond the period prescribed ***." 725 ILCS 5/103—5(f) (West 1994).

■ The trial court did not abuse its discretion in granting the State a continuance to May 21 pursuant to paragraph (f). See *People v. Schmidt*, 233 Ill. App. 3d 512, 516, 599 N.E.2d 201 (1992) (where no delay by defendant within 21 days of end of term, State not entitled to extension under paragraph (f); implying if delay occurs within 21 days of end of period by defendant, then State would be entitled to

extension); *People v. Hamblin*, 217 Ill. App. 3d 460, 464, 577 N.E.2d 544 (1991) (where defendant caused delay within 21 days of end of term, State may be granted extension); *People v. Miles*, 176 Ill. App. 3d 758, 773-74, 531 N.E.2d 891 (1988) (no error in granting extension under paragraph (f) where defendant caused delay on last day of term).

Additionally, at oral argument on appeal, defendant's counsel conceded that if the delays from April 19 to May 16, and May 16 to May 17 were attributable to defendant, then the extension would be proper.

Accordingly, the trial court did not err in granting the State an extension under paragraph (f).

In sum, based on all of the above, we find defendant was not tried outside the 120-day statutory period and is not entitled to discharge under the Speedy Trial Act.

## II. OTHER CRIMES EVIDENCE

Defendant next argues that the trial court abused its discretion in allowing evidence of defendant's prior unlawful sale of March 23, 1989, and that this error was compounded when the State commented upon it in rebuttal closing argument.

Agent Mueller, a special agent with the Immigration and Naturalization Services (INS), testified that he, along with another INS agent, Agent Kading, and a Drug Enforcement Agency (DEA) agent, Agent Fanter, met with a confidential informant and arranged a meeting between the informant, Kading, and defendant to purchase drugs. During the transaction, Mueller and Fanter provided surveillance and Kading completed the transaction.

During cross-examination of Mueller, defense counsel elicited testimony from him that he and Fanter attempted to follow the informant, who left the scene during the buy, but they lost him in traffic. In an attempt to impeach Mueller, counsel asked if the investigative reports contained this information. After being shown the reports, Mueller admitted they did not contain this information. He also admitted that no photographs were taken, no tape recordings made, or any fingerprints analyzed.

On redirect, the State elicited that Mueller had followed defendant on a prior occasion, March 23, 1989, the date of the other sale. The testimony was:

"Q. And in this case you knew who Sergio Andrade was; is that correct?

* * *

Q. As a matter of fact, Marty, could you be confusing following

the vehicle with another case that defendant was involved in; the delivery of drugs?

\* \* \*

Q. Could you be confusing following the vehicle in the May 17th delivery with the delivery of March 23rd,—

\* \* \*

Q. When did you follow the vehicle that the defendant was in; which drug transaction?

A. That was in the first one; during March of '89."

In a sidebar, defendant's counsel argued that by questioning Mueller he was not trying to elicit the March 23 sale. He instead argued that he impeached Mueller based on the lack of any evidence in his report that Mueller followed defendant during the May 17 event. He objected to the State's questioning contending that the State was attempting to rehabilitate Mueller through another report, but that report did not rehabilitate him. The court responded:

"THE COURT: Yes, it does. It shows he made a mistake.

MR. DIAMOND-FALK: He could have asked him if he made a mistake.

THE COURT: He did.

MR. DIAMOND-FALK: No, he did not.

THE COURT: If it was possible he made a mistake on the day he followed the defendant?

He certainly did. Counsel, just because you didn't hear it he asked him if he could have made a mistake as to the date he followed the defendant's car. He said yes.

The State said couldn't it possibl[]ly have been another day? He said yes.

Besides the fact, you raised with this officer whether or not they photographed the guy, whether or not they took a camera, he said no, you brought out the purpose to verify, though, the reason was—you are certainly raising the issue of identity \*\*\*."

Defendant contends it was improper to allow evidence of the March 23 sale because it was used only to show defendant's propensity to commit crimes. In addition, he argues the State compounded the error by arguing the prior sale in rebuttal closing argument. Defendant avers these errors were not cured by instructing the jury and were not harmless. The trial court found the evidence relevant to show identity and to rehabilitate Mueller after he was impeached.

■ Evidence of other offenses is inadmissible to demonstrate a defendant's disposition or propensity to commit crimes. *People v. Illgen*, 145 Ill. 2d 353, 364, 583 N.E.2d 515 (1991). However, other crimes

evidence may be admitted when it is relevant for some other purpose, such as identification. *People v. Gonzalez*, 142 Ill. 2d 481, 568 N.E.2d 864 (1991); *People v. McCray*, 273 Ill. App. 3d 396, 653 N.E.2d 25 (1995).

> "It is the function of the trial court to weigh the probative value and prejudicial effect of evidence in determining whether it should be admitted. ***
>
> Evidentiary rulings of this nature will not [be] overturned on appeal unless a clear abuse of discretion is shown." *Gonzalez*, 142 Ill. 2d at 489-90.

In this case, whether Mueller knew defendant prior to May 17 was clearly relevant to the issue of identification. Prior to Mueller's testimony, defense counsel extensively raised the issue of identification during the testimony of Agents Kading and Fanter. He emphasized the lack of photographs, tape recordings, and fingerprints which would substantiate identification. When defense counsel cross-examined Mueller, he sought to impeach Mueller's identification of defendant by demonstrating inconsistencies between his testimony and reports, and by implying that Mueller was incorrect in his identification. Thus, the evidence was relevant to establish and prove identification.

However, we do not believe that it was necessary or proper for the State to use the term "drug transaction" or refer to the prior incident as a case involving the "delivery of drugs." See *People v. Butler*, 31 Ill. App. 3d 78, 80, 334 N.E.2d 448 (1975) ("When evidence of other offenses is admissible on the question of identity it should be confined to such details as show the opportunity for identification and not the details of the crime"). The State could have easily accomplished its purpose without referring to the incident as a drug transaction or an incident involving the delivery of drugs.

Nevertheless, however, we find any error to be harmless. "The erroneous admission of other crimes evidence ordinarily calls for reversal unless the record affirmatively demonstrates that no prejudice occurred." *People v. Nunley*, 271 Ill. App. 3d 427, 433, 648 N.E.2d 1015 (1995). The evidence must be so prejudicial as to deny defendant a fair trial, *e.g.*, it must have been a material factor in his conviction and, without it, the verdict likely would have been different. *People v. Williams*, 161 Ill. 2d 1, 41-42, 641 N.E.2d 296 (1994). If the State's other evidence establishes defendant's guilt beyond a reasonable doubt, the erroneous introduction of other crimes evidence will be deemed harmless. *People v. Murdock*, 259 Ill. App. 3d 1014, 1021, 632 N.E.2d 313 (1994); *People v. Scott*, 194 Ill. App. 3d 634, 642, 551 N.E.2d 288 (1990). If the error is unlikely to have influenced the jury, admis-

sion will not warrant reversal. *People v. Wilson,* 164 Ill. 2d 436, 459, 647 N.E.2d 910 (1994).

The verdict in the instant case would not have been different without the reference. Two other agents identified defendant as the individual at the scene. Agent Kading with the INS testified that he was acting as an undercover agent who would make the purchase. He spoke with defendant over the phone to arrange the sale. Defendant advised him where to meet. When Kading arrived at the scene, he got out of his car and saw defendant walk towards him. Kading stated that he already knew who defendant was and identified defendant in court. Defendant told Kading that they had to go elsewhere to complete the purchase, and they agreed that Kading would go across the street. Defendant then left the scene. Kading waited where he was told to for approximately 30 minutes and then heard someone call him from the gangway of an apartment about 25 feet from where he was waiting. He looked in and saw defendant. Kading went to defendant, retrieved the narcotics from him, and gave defendant $2,400 for the narcotics. Defendant then proceeded to count the money and, when he was finished, said that Kading could call him anytime. Kading then left.

Agent Fanter testified that he was on surveillance approximately one-quarter of a block from where the transaction was to take place. Fanter was using binoculars to watch. He saw defendant approach Kading. He then watched as Kading changed locations and went into the gangway. After he watched Kading exit the gangway, he saw defendant exit it.

In addition, there was no extended emphasis of the term "drug transactions" or delivery of drugs. *People v. King,* 248 Ill. App. 3d 253, 273-74, 618 N.E.2d 709 (1993). Finally, immediately after the statement, the trial court instructed the jury to disregard the terms and not to use them in arriving at its verdict. This cured any possible prejudice to defendant. *People v. Robinson,* 254 Ill. App. 3d 906, 913, 626 N.E.2d 1242 (1993). The minimal reference was not likely to have materially influenced the jury's decision and, thus, defendant was not prejudiced. Therefore, defendant was not denied a fair trial.

With regard to the prosecutor's statements during rebuttal closing argument, the State is afforded great latitude in closing argument. *People v. Page,* 156 Ill. 2d 258, 276, 620 N.E.2d 339 (1993). The trial court's determination whether statements are proper will not be disturbed absent a clear abuse of discretion. *People v. Herrera,* 257 Ill. App. 3d 602, 617, 629 N.E.2d 546 (1994). "To constitute reversible error, the complained-of comments must have resulted in substantial prejudice to the accused such that absent those comments the result

would have been different." *People v. Resendez,* 273 Ill. App. 3d 751, 760, 652 N.E.2d 1357 (1995).

■ In rebuttal closing argument, the State made one reference to the sale of March 23, 1989, and did not refer to it as a drug transaction. Rather, it did exactly what the trial court advised it to do, it stated, "You heard from Agent Mu[e]ller that he had another incident back in March *** that the defendant was involved in." It did not refer to the incident as a drug transaction. Further, the reference was made in response to defendant's closing argument, which centered entirely around the lack of identification.

We therefore conclude that the trial court's decision allowing the testimony and statement in rebuttal argument was not an abuse of discretion.

## III. SENTENCING

Defendant's final contention is that his nine-year sentence is excessive in light of his strong rehabilitative potential, his lack of criminal history, and the fact the trial court believed the crime was not likely to reoccur.

The imposition of a sentence rests within the sound discretion of the trial court, based on the particular facts and circumstances of each case, and will not be altered on review absent an abuse of discretion. *People v. Jones,* 265 Ill. App. 3d 627, 637 N.E.2d 601 (1994). A reviewing court should not substitute its judgment for that of the sentencing court merely because it would weigh factors differently. *People v. Berry,* 264 Ill. App. 3d 773, 783, 642 N.E.2d 1307 (1994). Relevant factors include: the gravity of the offense; the circumstances of the crime; and defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age, and criminal history. *Jones,* 265 Ill. App. 3d at 639. Other factors include protection of public, deterrence, rehabilitative potential, and lack of remorse. *People v. Morrow,* 269 Ill. App. 3d 1045, 647 N.E.2d 1100 (1995).

■ The sentence range for defendant's crime was 6 to 30 years. The trial court sentenced him to nine years after looking at his background and finding him to be a "fine person." The court noted his graduation from high school, some college attendance, completion of automotive school, and enlistment in the army. It recognized his commendations from the army and honorable discharge. It found him to have given "exceptional service." The court also noted that defendant had only one prior misdemeanor conviction. It stated the maximum sentence was not warranted and that it hoped and believed defendant would not commit the same sort of crime after he served his sentence.

Without addressing the State's waiver argument, based on the nature of the offense and the trial court's highlighting the positive aspects about defendant, we find the trial court did not abuse its discretion in sentencing defendant.

For all the foregoing reasons, we affirm defendant's conviction and sentence.

Affirmed.

ZWICK, P.J., and McNAMARA, J., concur.